JAMES G. TAYLOR, PLAINTIFF AND APPELLANT, V. D. G. COURTNAY ET AL., APPELLEES, AND JOSEPH MANNING APPELLANT.

1. **Taxes:** REPEAL OF SPECIAL LIMITATION AS TO TAX DEEDS. Section 105 of the revenue law of 1869, as amended in 1871, which declared that after a lapse of three years from the time of recording the treasurer's deed, the owner of lands should be debarred from commencing or maintaining an action to recover the same, was repealed without a saving clause by the revenue law of 1879. Hence, unless the party claiming title under the tax deed had been in possession three years before the act was repealed, his title is not aided by the statute. [COBB, J., dissenting.]

2. ———: REDEMPTION. Where a tax purchaser received a large portion of the taxes paid from the owner of the land, for the redemption on the same, *Held*, That the owner was entitled to redeem. And a purchaser who took a quit-claim deed for the premises, with a statement in the deed of the trust, was chargeable with notice. [COBB, J., dissenting.]

3. **Execution.** An execution from which the seal of the court has been omitted is not void, but may be amended even after the sale is confirmed.

4. **Bona fide Purchaser.** Where the holder in possession under a tax deed proclaimed at a sale of the premises upon an execution against the owner, that he had a deed from such owner for the same, and thereby prevented competition, and the purchaser knowing these facts purchased the property for very much less than its actual value, and then commenced an action to restrain the payment of the money, *Held,* That he was not a *bona fide* purchaser and that the owner was entitled to have the sale set aside.

APPEAL from the district court of Lancaster county. Tried below before POUND, J.

*Lamb, Billingsley & Lambertson,* for appellant Taylor.

1. The limitation clause of the act of February 15th, 1869, as amended June 6th, 1871, § 105, General Statutes of Nebraska, is no bar to this action. This clause is unconstitutional. *Groubeck v. Seeley,* 13 Mich., 329. *Walby v. Callender,* 8 Mich., 430. *Quindon v. Rogers,* 12 Mich., 169. *Case v. Dean,* 16 Mich., 12. The above act of February 15th, 1869, was repealed by the revenue act of September 1st, 1879, before the right of action was barred, and before the defendant Courtnay had acquired any right under said limitation act. The tax deed was recorded February 13th, 1878. At the date of the repeal, plaintiff's right of action was complete. There was no saving clause in said repealing act preserving to the defendant Courtnay the time already run. The statute was simply obliterated, and the year and a half devoured by the old act, not being a vested right, goes for nought. Plaintiff's right of action at the date of repeal was just as complete as if no limitation act had been in existence. Upon the advent of the repealing statute, the action became re-juvenated, and took a new lease of life.

2. The defendant cannot avail himself of limitation clause of the revenue act that went into effect September 1st, 1879. Three years have not run since the statute

went into effect. You cannot add to the time run under the old act the time run under the new, and in this way patch up a three years' limitation, unless there is a saving clause in the new act authorizing such a method of computation. *Coffin v. Rich,* 45 Maine 507. *Battle v. Forbes,* 19 Pick., 578. *Scarborough v. Dugan,* 10 Cal., 308. *Johnson v. Meeker,* 1 Wis., 382. The uniform rule is that statutes of limitation apply to rights of action which are to commence *in future.* Angell on Limitation, § 23. There is nothing in the act of September 1st, 1879, that extends the provision of the law quoted above to deeds made anterior to the passage of said law. On execution title, cited: *Arnold v. Nye,* 23 Mich., 287. *Sabin v. Hustin,* 19 Wis., 421. *Rose et al. v. D. V. R. Co.,* 47 Iowa, 420. *People v. Dunning,* 1 Wend., 16. *Sawyer v. Baker,* 3 Greenleaf, 29. *Dominick v. Eacker,* 3 Barbour, 17.

*Burr & Marshall,* for appellant Manning, cited: *Ins. Co. v. Halleck,* 6 Wall. (U. S.), 558. *Swett v. Patrick,* 2 Fairfield (Me.), 179. *King v. Baker,* 7 La. Ann., 571. *Lee v. Newkirk,* 18 Ill., 550. *Hannem v. Thompson,* 1 Scam. (Ill.), 238. *Monaghan v. Monaghan,* 25 Ohio State, 328. *Toof v. Bentley,* 5 Wend. (N. Y.), 276. Freeman on Void Judicial Sales, p. 59, citing *Townsend v. Tallent,* 33 Cal., 54. *Griffith v. Judge,* 49 Mo., 536. *Chamblee v. Tarbox,* 27 Tex., 149. *Tirman v. Wilson,* 6 Johns. Ch., 410. *Hamilton v. Quimby,* 46 Ill., 90.

*J. L. Caldwell* and *D. G. Courtnay,* for appellees, on possession and limitation, cited: *Eldridge v. Kuehl,* 27 Iowa, 161. *Douglas v. Tallock,* 34 Iowa, 262. *Oconto Co. v. Jerrard,* 46 Wis., 317. *Milledge v. Coleman,* 47 Wis., 184. *Suydam v. Williamson,* 24 Howard, 427. *Parrett v. Holmes,* 12 Central Law Journal, 200. The enactment of the revision was not the making of a new law, but merely a continuation of the old. *Thompson v. Reed,* 41 Iowa, 48. *McDonalds v. Jackson,* 55 Iowa, 38.

*Hall's application for habeas corpus,* 10 Neb., 537. On seal to execution, cited: *Insurance Co. v. Halleck,* 6 Wall., 588.

MAXWELL, J.

The plaintiff claims to be the owner of lot 18 in block 56 in the city of Lincoln, with the building thereon known as the "Clifton House," and filed his petition against Courtnay and wife in the district court of Lancaster county to redeem said real estate from certain tax sales under which Courtnay holds possession, and to recover the possession, and for the rents and profits. Courtnay and wife answered the petition alleging that they and their grantor have been in possession of said premises ever since the 13th day of February, 1878, under a tax deed to Harris, Courtnay's grantor, which deed was at the aforesaid date duly recorded, and which being recorded for more than three years vests a perfect title in the defendants, and also alleging that the plaintiff claims title under a sale upon execution against one Joseph Manning, the former owner of said premises, which sale was void for certain reasons specified, but principally because there was no seal upon the execution. Manning was permitted to intervene, and filed an answer and cross bill claiming to be the owner of the premises and setting up certain defenses which will be referred to hereafter, and asking for affirmative relief. On the trial of the cause in the court below, a decree was rendered in favor of Courtnay. Manning and Taylor appealed to this court.

The title to the premises in question is in Manning unless it has been divested by the tax deed held by Courtnay, or the sheriff's deed held by Taylor. These questions will be considered in their order.

It appears from the record that on the thirty-first day of December, 1875, one Charles L. Harris purchased the

13

premises in question at private tax sale for the taxes due thereon for the year 1874, being the sum of $202.50. There is testimony tending to show that there was an agreement between Harris and Manning that the latter was to be permitted to redeem the premises by paying the amount of taxes and interest as fast as he was able, and the following receipt was given in evidence:

"$79.20.   Rec'd Lincoln, Neb., Sept. 22, 1876, of Joseph Manning, Esq., the sum of seventy-nine 20–100 dollars to apply on redemption of lot No. 18 in block No. 56, Lincoln, Neb., sold for taxes of 1874 on the thirty-first day of December, 1875.

"M. R. JOHNSON,
"By W. W. WILSON, *Agent.*"

Manning appears to have been unable to raise money to pay the remainder of the redemption money, and on the thirteenth of February, 1878, Harris obtained a tax deed from the treasurer of Lancaster county and entered into possession, and such possession continued until he conveyed to Courtnay, on the twenty-third of December, 1879; Courtnay then took possession under said deed, and has remained in possession receiving the rents and profits ever since. The deed from Harris to Courtnay is a quit-claim, and contains this provision: "Provided said D. G. Courtnay and his assigns, executors, and administrators shall and will save said Charles L. Harris harmless from any and all claim or claims by any person or persons whomsoever for rents received or for the use and occupation of said premises prior to the first day of January, 1880, and said rents and profits up to that date shall be applied on taxes paid, repairs done on said premises while the same was occupied by said Harris under tax and purchase for taxes." Harris received the rents and profits of the premises up to the time he conveyed to Courtnay.

Courtnay claims that he and his grantor have been in exclusive adverse possession of said premises for three years,

four months, and thirty-three days, under their tax deed, before the commencement of this action : and that thereby he has obtained an absolute title under the special limitation of three years of the revenue law.

· Sec. 105 of the revenue law of 1869, as amended in 1871, was as follows: "Any person or persons or county purchasing any lands or town lots at any private sale for taxes levied on lands sold under the provisions of this act, shall, after the lapse of three years from the time of recording the treasurer's deed therefor, acquire a complete and perfect title thereto, and all other persons claiming title to any such lands or lots shall, after the lapse of three years from said date, be debarred from commencing or sustaining any action in any court of this state to recover possession of the same, and the courts of this state are hereby prohibited from entertaining or sustaining any such action." Gen. Stat., 933.

This act was repealed in 1879 without a saving clause as to limitations, and the following section enacted: "No action for the recovery of real property sold for non-payment of taxes shall lie unless the same be brought within three years after the treasurer's deed is made as above provided; *Provided*, That where the owner of such real property sold as aforesaid shall, at the time of such sale, be a minor, or insane, or convict in a penitentiary, or under any other legal disability, three years after such disability is removed shall be allowed such person, his heirs, or legal representatives to bring such action." Comp. Stat., 425.

In *State v. McColl*, 9 Neb., 203, where the new act was copied verbatim from the old, it was held to be a mere continuation of the former act—that there was no change in the law, citing *Fullerton v. Spring*, 3 Wis., 671. *Wright v. Oakley*, 5 Met., 406. And this rule undoubtedly applies in all cases where the new law contains the same provisions as the old. But where the provisions of the two acts are entirely dissimilar we are not aware of any case in which

it is held that, upon the repeal of the old law without a saving clause, the new act will continue the provisions of the old in force. By the terms of the former act it is declared that after the lapse of three years from the time of recording the treasurer's deed the purchaser shall acquire a complete and perfect title to lands purchased, and the claimant shall be debarred from bringing or the courts from sustaining an action to recover such land; by the present law the action must be brought within three years after the execution of the treasurer's deed. The power of the legislature to declare that an owner shall be divested of his property without a hearing, and that the courts of the state in a proper case shall not grant him relief, is very doubtful. And in no event could it be done under the general title of the revenue law. Nor is there anything so peculiarly sacred about a tax purchase—a purely business transaction— as to render it an unfit subject for judicial investigation. The legislature may fix a reasonable time within which an action shall be brought or the party be barred. The benefit of the statute, like any other personal privilege, may be waived, and will be unless pleaded. But when an act merely limits the time within which a bad title will ripen into a good one it is not, either in spirit, purpose, or effect, a statute of limitations. Cooley on Taxation, 376. We hold, therefore, that the revenue law of 1869 as amended in 1871 having been repealed without a saving clause before it had run in Courtnay's favor, he derives no benefit from the same, and the action is not barred.

*Second.* It is clearly shown that Manning paid to the tax purchaser $79.20, under an agreement to redeem. The terms do not seem to have been very definitely fixed, nor was it necessary that they should be. The money was paid and accepted, and the tax purchaser could not, after receiving nearly one-half of the tax, proceed to take the title and hold as owner. Nor does he seem to have done so. He recognized the right of Manning to redeem, and the inser-

tion of the peculiar provision in the deed to Courtnay was notice to him of any equities which Manning may have in the property. Courtnay was not therefore a bona fide purchaser, and holds the property subject to the right of redemption as hereinafter provided. Objection is made to Manning's right to redeem, because he has not paid the amount of redemption money to the treasurer of Lancaster county, as required by sec. 119 of the revenue law; but the provisions of that section apply only to cases where the owner seeks to redeem according to the mode prescribed in the statute. In this case Manning seeks to redeem under the agreement and not under the provisions of section 119. That section therefore has no application.

*Third.* Taylor claims as purchaser on an execution sale. The execution was issued on a deficiency judgment after certain mortgaged property had been exhausted. The real estate in question was appraised at $5,000; certain tax liens, including the tax deed in question, were deducted. The plaintiff's bid was $2,250. The statute does not mention tax deeds as proper for the appraisers to consider. They cannot determine whether the deeds are valid or not. The land is levied upon as belonging to the debtor. The appraisers are to value it as his property less the liens which the records show to exist against it; not to try titles. Any other rule would permit the appraisers, when called upon merely to appraise the value of a certain piece of real estate and deduct liens, to determine that the debtor had been divested of his title. The object of an appraisement law is to protect the debtor, and the court should see to it that the law is carried out in its spirit, and where it is apparent that the appraisement has not been fairly made to set the sale aside at once. From the cases that come into this court it is apparent that not infrequently the appraisers, instead of confining themselves to their duties under the statute, proceed to determine titles, and thus make the appraisement law an engine of oppression to the debtor. The sale

was confirmed by the court and a deed made to the plaintiff, who at once instituted an action to restrain the sheriff from paying the money over, upon the ground that he would obtain no title from Manning and therefore he would obtain nothing from his purchase. It appears that the execution, although in proper form, did not have the seal attached to it, and it is claimed that therefore it was void. It seems that after the sale and confirmation thereof leave was asked and given to amend the execution by attaching the seal to the same. Was the execution without a seal void? We think not. It is true a large number of cases may be found, principally under the common law, where it is held that the absence of a seal, where one is required by the statute, will render the writ void. But why should it be void if in proper form, issued by the proper officer, and upon a valid judgment? It was issued by an officer of the court and the neglect was the fault of such officer and not of the parties. It has been held that an execution was amendable where it was tested the year after its issue. *Jackson v. Bowling*, 10 Ark., 578. Or by correcting the name of the place where it was tested. *Simons v. Gurney*, 5 Taunt., 605. *Porter v. Goodman*, 1 Cow., 413. Or where the seal, as in this case, was omitted. *Arnold v. Nye*, 23 Mich., 286. *Corwith v. State Bank*, 18 Wis., 560. *Bridewell v. Mooney*, 25 Ark., 524. *Sawyer v. Baker*, 3 Me., 29. The writ is clearly amendable by affixing the seal to the same, and being so it is not void. And the amendment being matter of mere form, which did not affect the substantial rights of the parties, related back to the time of issuing the execution. This objection therefore is not well taken.

*Fourth.* A more serious objection is made to the plaintiff's title in the fact that the property is shown to have been worth at the time of the purchase about $10,000; that Courtnay by stating that he had a deed from Manning for the property, prevented those who desired to purchase

from bidding; that had there been competition the property would have sold for a very much larger sum; that the plaintiff was aware of this statement and took advantage of it to obtain the property for a sum greatly below its value; that then instead of relying on his title, he at once instituted proceedings to determine whether or not Courtnay had a deed from Manning for the premises. If he had, then the plaintiff asked for a return of the purchase money. He evidently was not a purchaser in good faith, and he recognized this fact as the evidence shows, by offering Manning since the sale was made, $2,000 to convey his interest. The confirmation of a sale merely applies to the regularity of the proceedings. It does not affect equitable grounds for relief which prevented a fair sale, and which were unknown to the parties, and not before the court when the sale was confirmed. It is the duty of a court to see that sales under its process are fairly conducted, competition invited and encouraged, and that no undue advantage is obtained over the debtor. It is very clear that an undue advantage over Manning was obtained in this case, for which the sale must be set aside.

The judgment of the district court is reversed, the sale of the premises to Taylor set aside, and Manning will have leave upon the payment of all taxes and interest, to redeem from the tax sale. As Courtnay has been in possession for several years, receiving the rents and profits, it will be necessary to appoint a referee to take and state an account between the parties. A decree will be entered in this court in conformity to this opinion.

DECREE ACCORDINGLY.

LAKE, CH. J., concurs.

COBB J., dissents from the first and second clauses of the syllabus.